James H. Walden City Attorney Fort Lauderdale
(Supplement to 078-17)
(See 078-17 for question.)
As I indicated in my letter to your predecessor dated March 31, 1978, I have considered it necessary to reexamine the statements and conclusions of AGO 078-17 which tend to indicate that death benefits contained in and provided as an integral part of a municipal pension plan funded by contributions to a pension trust fund are the same as life insurance and that the providing of pension death benefits under such circumstances invokes the competitive bidding or other requirements of s. 112.08, F. S. After examining and reading together all relevant laws (and their respective histories) and judicial interpretations relating to municipal pension plans and insurance, and after receiving the views of the Department of Insurance, I find it necessary to recede from and revise AGO 078-17, as explained below.
First, I must emphasize that this opinion is concerned (and AGO 078-17 should have been concerned) solely with death benefits which are an integral part of a municipal pension or retirement plan funded by contributions to a pension or retirement trust fund, from which pension or retirement trust fund the death benefits (and other pension benefits) are payable. For purposes of comparison and illustration, see s. 121.091(7), F. S., setting forth the death benefits provided as an integral part of the Florida Retirement System for state and county employees and employees of municipalities electing to participate in the Florida Retirement System.
The providing of such death benefits in a municipal pension plan must be separated and distinguished from a municipality's making group life insurance available to its employees and paying all or part of the premium for such group life insurance contracts as is commonly done with health and hospitalization insurance contracts for employees. It would be in the event that a municipality chooses to so make available group life insurance for its employees that the provisions of s. 112.08, F. S., regarding competitive bidding in the purchase of group life insurance would become applicable. I would note that the last sentence in s.112.08(1) requiring contracting with an insurance company or professional administrator approved by the Department of Insurance to administer self-insurance plans applies only to a unit of local government which elects to self-insure health, accident, and hospitalization insurance coverage for its employees. As the self-insurance of life insurance is not authorized in s. 112.08, the provisions requiring contracting with an insurance company or professional administrator to administer self-insurance plans are not applicable to the purchase of contracts of life insurance from licensed life insurers, although the governmental unit may contract with professional administrators to provide such group life insurance. What is at issue here is not life insurance, nor is it the self-insurance of life insurance plans. It is merely the providing of death benefits, along with other customary retirement benefits, as a component or integral part of a validly adopted pension or retirement plan.
Confusion in AGO 078-17 of municipal pension plan death benefits with life insurance or contracts for life insurance (and resulting statements that the providing of such pension benefits invokes the requirements of s. 112.08) appear to have been the result of the manner in which the question was posed and answered. The question presented and addressed on AGO 078-17 was whether such pension plan death benefits were `in the nature of a contract for life insurance,' rather than whether they were actually the same as life insurance of a contract of life insurance (and thus subject to all statutes, including s. 112.08, regulating life insurance and life insurance contracts). The statements made in AGO 078-17, supported by citations, that death benefits in a municipal pension plan are `in the nature of a contract for life insurance' are correct. There are certain general similarities, such as the making of payments upon the occurrence of death (although not in consideration of stated premiums fixed by contract), and the designation of persons as beneficiaries of such payments. However, the point which was overlooked in AGO 078-17, and which I now must make, is that a determination that something is `in the nature of a contract for life insurance' is not the same as a determination that that thing actually is a life insurance contract. I have found that the cases holding such death benefits to be `in the nature of life insurance' do not state that the benefits are contracts for life insurance or that the providing of such benefits under the circumstances herein delineated is subject to statutes regulating insurers or life insurance contracts. Cases such as Shaw v. Board of Administration, 241 P.2d 635 (Cal.App. 1952), cited in AGO 078-17, stand merely for the proposition that the similarities between pension death benefits and actual contracts of life insurance make it permissible to apply generally (for analogy) to the construction of pension death benefit provisions (such as designation of beneficiary) principles applicable to the construction of contracts of life insurance. In fact, one of my predecessors in office considered the same factual situation as existed in Shaw (divorce of a spouse previously named as beneficiary and subsequent failure to designate a different beneficiary) and recognized — as did not court in Shaw — that rules of construction applicable to determination of beneficiaries in life insurance contracts may be applied, because of similarities, to questions, involving the determination of beneficiaries of pension plan death benefits. See AGO 057-20. In 63 A.L.R. 712, in an annotation entitled `What constitutes insurance,' a similar point is made as to the applicability of principles of insurance contract interpretation to the interpretation of surety agreements. It is there stated:
 The cases in which a bond of a surety company, for example, has been held to be in the nature of insurance as regards interpretation of the contract, cannot apparently be regarded necessarily as authority for the proposition that such obligations are insurance contracts for other purposes, but may mean only that the contract is so far analogous to an insurance contract that it should be similarly interpreted. (Emphasis supplied.)
It is, then, the distinction and difference between an actual contract of life insurance issued by a licensed life insurer and something merely `in the nature of a contract for life insurance' which is determinative of the applicability of statutes regulating the purchase or providing of contracts of life insurance, such as s. 112.08, supra. I have been advised by officials of the Department of Insurance (which is the agency charged by law with enforcing the State Insurance Code, including the regulation and licensing of life insurers and life insurance contracts) that the department does not consider the providing of death benefits by a municipality, under and as an integral part of a pension plan funded by contributions to a pension trust fund, to be a life insurance contract for purposes of applicability of s. 112.08, nor does it consider a municipality providing such pension plan death benefits to be engaged in the self-insurance of plans for life insurance. Such an administrative interpretation by an agency charged with the administration and enforcement of the laws governing insurance, including s. 112.08, is entitled to great weight and is to be followed unless ruled by a court of competent jurisdiction to be clearly erroneous. Gay v. Canada Dry Bottling Co. of Florida, 59 So.2d 788, 790 (Fla. 1952).
It is thus my opinion that when a municipality validly establishes a pension or retirement plan for its employees, whereby funding of such plan is by contributions to a pension or retirement trust fund, and provides as an integral part of the pension or retirement plan death benefits payable out of the pension or retirement trust fund (as, for example, those provided in s.121.091(7), F. S., payable out of the state's retirement system trust funds), the death benefits so provided may be said to be `in the nature of a contract for life insurance' for purposes of construction of the terms and provisions of such plans by analogous principles and rules of construction governing the construction of life insurance contracts. However, such pension plan death benefits do not constitute `life insurance' or a contract for life insurance as defined in ss. 624.02 and 624.602, F. S., for purposes of determining applicability of regulatory provisions of the Insurance Code and the provisions of s. 112.08, F. S., nor does the providing of municipal pension plan death benefits as herein described and limited constitute self-insurance of a plan for life insurance by a municipality.
SUMMARY:
Death benefits in a municipal pension or retirement plan for municipal employees funded by contributions to a pension trust fund, which benefits are payable out of the pension or retirement trust fund, are not `life insurance' or a contract for life insurance. The providing of municipal pension plan death benefits under such circumstances does not fall within the competitive bidding or other requirements of s. 112.08, F. S., relating to payment by a unit of local government of all or part of the premiums for contracts of group life insurance for its employees.
Prepared by: Jerald S. Price, Assistant Attorney General